### BALLARD et al. v. BEVERIDGE.

(Supreme Court, Appellate Division, First Department. December 8, 1899.)

EVIDENCE—RES GESTÆ—PRINCIPAL AND AGENT—LETTERS.

     An agent's letter to his principal, detailing the final settlement of an account he was authorized to effect, is inadmissible to prove such settlement, as a part of the res gestæ.

     Patterson, J., dissenting.

Appeal from trial term, New York county.

Action by Virginius Ballard and others, as assignees, against Alven Beveridge. From judgment dismissing the complaint, plaintiffs appeal. Reversed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, PATTERSON, and O'BRIEN, JJ.

Sullivan & Cromwell and Charles F. Brown, for appellants.
Eugene L. Bushe and David McClure, for respondent.

BARRETT, J. I am unable to concur with Mr. Justice PATTERSON in this case. Reference to the facts upon which the former judgment was reversed (39 N. Y. Supp. 566) only tends to confuse the question presented by the present appeal. Our duty is simply, while

following the rule of law laid down upon the former appeal, to decide whether the facts in this record bring the case within its application. The action is for the conversion of 400 shares of stock. The defendant denies the conversion, and alleges affirmatively an accord and satisfaction which embraced the shares alleged to have been converted. Upon the trial the plaintiffs gave evidence, amply sufficient to go to the jury, tending to establish the conversion. Yet they were nonsuited, the learned court being of the opinion that, in cross-examining the plaintiffs' witnesses, the defendant had succeeded in getting the accord and satisfaction into the plaintiffs' case and in establishing it so conclusively that there was not even a question for the jury on that head. The question now is, was the nonsuit justified by the proof as it then stood?

There was no proof of the accord and satisfaction as an independent fact. The alleged settlement rests wholly upon the declarations of an agent employed to negotiate it, made to his principal. Plainly, the letter in which this agent (Price) informs his principal (Duke) that one "Cromwell has settled the account with Beveridge" was inadmissible. It was a mere narrative of what had occurred. We do not know what had occurred or what had been settled. We only know what the agent says had occurred. His declarations, made concurrently with his acts or in the course of his negotiations, relating to, and connected with, the business then depending, were a part of the res gestæ. But there were none such, and his declarations cannot create the res gestæ. Whatever bargain was here made was made before Price wrote the letter in question to Duke. The declaration is therefore the narrative of a concluded bargain.

It was held in England, as long ago as the year 1812, that "letters of an agent to his principal, in which he is rendering him an account of the transactions performed for him, are not admissible in evidence against the principal." Langhorn v. Allnutt. 4 Taunt. 511–520. Lord Mansfield there said that such "letters are not a part of the res gestæ, not letters written in the course of the transaction and forming a part of it, but a mere narrative." Chambre, J., said that the letters "were properly rejected; they are not a part of the res gestæ, but merely an account of them, and upon no ground admissible." Gobbs, J., added:

"When it is proved that A. is agent of B., whatever A. does or says or writes in the making of a contract, as agent of B., is admissible in evidence, because it is part of the contract which he makes for B., and therefore binds B., but it is not admissible as his account of what passes. Now, what are these letters? They are not part of the contract itself or of the res gestæ, but they are the account which the agent rendered to his principal of what he is doing. They are not, therefore, admissible."

Lord Mansfield, in his opinion, referred to the case of Fairlie v. Hastings, 10 Ves. 123, where the master of the rolls, Sir William Grant, examined the cases on this point. In the latter case the master of the rolls put the doctrine in these clear words:

"The admission of an agent cannot be assimilated to the admission of the principal. A party is bound by his own admission, and is not permitted to contradict it. But it is impossible to say a man is precluded from questioning or contradicting anything any person has asserted to him, as to his conduct

or his ·agreement, merely because that person has been an agent of his. If any fact material to the interest of either party rests in the knowledge of an agent, it is to be proved by his testimony, not by his mere assertion. Lord Kenyon carried this so far as to refuse to permit a letter by an agent to be read to prove an agreement by the principal. Maesters v. Abraham, 1 Esp. 375. If the agreement was contained in the letter, I should have thought it sufficient to have proved that the letter was written by the agent. But, if the letter was offered as proof of the contents of a pre-existing agreement, then it was properly rejected."

While the precise question does not seem to have been decided in this country, the English rule is clearly within the general principles which have been laid down here with regard to the declarations of agents. The declaration here was not made in the course of any proved negotiation. It did not characterize any proved act. It was not the act itself, nor any part thereof. The agreement was not contained in the letter. The latter was plainly information as to a pre-existing concluded agreement, and was mere hearsay. It was, in fact, hearsay upon hearsay, as it merely purported to declare to the principal what Cromwell had declared to the agent.

It is said that Duke received and accepted the stock, check, and notes referred to in the letter, but of that there is no evidence. The stocks and check were retained by the agent,—so the letter states,—and the notes, though purporting therein to be forwarded,. were not brought home to Duke. The latter's bookkeeper, who was the only witness on that subject, testified that he did not remember whether he received them or not. The receipt and acceptance of these securities by Duke could not be proved by the agent's declaration, any more than the settlement itself. As the letter was, in my judgment, inadmissible, I shall not consider its effect. I do not wish, however, in refraining from a discussion on that head, to be understood as concurring in Mr. Justice PATTERSON'S opinion that it conclusively established the accord and satisfaction pleaded, and that that accord and satisfaction embraced the 400 shares of stock in question.

The order should be reversed, and a new trial ordered, with costs to the appellant to abide the event.

RUMSEY and O'BRIEN, JJ., concur. VAN BRUNT, P. J., concurs in result.

PATTERSON, J. (dissenting). When this cause was before us on a former appeal from a judgment in favor of the plaintiffs, we held, in reversing that judgment, that, as the proofs were then made, the action could not be maintained as one in conversion. We so held because there was evidence showing that there had been a settlement and accord and satisfaction of a detailed account of transactions between the defendant and the plaintiffs' assignor, Mr. Duke, including the 400 shares of stock for the alleged conversion of which the action was brought. There was also evidence then in the record that Mr. Duke had received the fruits of the settlement, that the defendant had paid him a sum of money, and also that the defendant had yielded a large part of what he claimed to be due him as commissions on the account, and it was held that, without a rescission of the settlement

and a restoration of the defendant to the position in which he stood before that settlement was made, conversion would not lie. In deciding the former appeal a new trial was ordered, which being had, the justice presiding thereat dismissed the complaint at the close of the plaintiffs' evidence, on the assumption that the proofs before him were substantially to the same effect on the subject of the settlement and accord and satisfaction as on the first trial. From the judgment entered upon the dismissal of the complaint, this appeal is taken.

There is unquestionably much difference between the proof made on the first and that appearing in the record of the second trial. By referring to the opinion of this court on the first appeal (6 App. Div. 349, 39 N. Y. Supp. 566), it will be seen that there was then in the case clear and convincing competent evidence of every fact necessary to establish the making of the settlement and its terms, that those terms were complied with by the defendant, and that Mr. Duke retained the product of that settlement. Much of that proof is absent from the present record, but the question now is whether without it there is enough in the present record to justify the dismissal of the complaint.

The contest between the parties relates to 400 shares of the stock of the American Tobacco Company, which belonged to Mr. Duke, and which, with other property, was in the hands of the defendant, an agent and attorney in fact of Mr. Duke. Hubbard, Price & Co., of the city of New York, were also agents of Mr. Duke. Both agents conducted large money transactions for their principal, and it would seem that in the course of these transactions each agent made loans to the other on account of their principal. Between March 4, 1893, and June 2d of the same year, many transactions were made by Beveridge for Duke, an account of which, made out in detail, was sent to Duke on the 10th of June, 1893. In that account is an item of a loan made March 31, 1893, by Hubbard, Price & Co. to Beveridge for Mr. Duke, and the giving, as collateral thereto, to Hubbard, Price & Co., of 400 shares of Mr. Duke's tobacco stock. Those shares have in some way become lost to Duke. They are the 400 shares for the conversion of which the action is brought; the plaintiffs' claim being that Beveridge did not deliver them to Hubbard, Price & Co., and that that fact was not discovered until about July 15, 1893, when, on a comparison of Beveridge's account with one rendered by Hubbard, Price & Co. to Duke, it appeared that Hubbard, Price & Co. had not credited Beveridge with the receipt of those shares. In his answer in this action, Beveridge sets up a settlement of the whole account, including the transaction of March 31st, and the accord and satisfaction thereof. On the first trial, it was shown that on the 10th of June, 1893, Beveridge's account was forwarded to Duke; that among other things, it showed the delivery of the 400 shares to Hubbard, Price & Co., on March 31, 1893; that Beveridge had in his possession 1,000 shares of tobacco stock belonging to Mr. Duke, 200 of which he inclosed with the account, and at the same time remitted a check for a cash balance appearing to be due Duke of $3,076.68, and the account also showed that Beveridge retained in his possession 800 shares of that stock,

for or as the equivalent of compensation for his services, which he charged as of the value of $25,839.03. On receiving this account, Duke repudiated it, returned to Beveridge the check, disputed the item for services, and referred Mr. Beveridge to Mr. Price; stating that he had sent instructions to the latter to adjust the matter with Beveridge, and he demanded that Beveridge turn over to Price the withheld 800 shares of stock at once. It also appeared on the former trial that Price entered upon negotiations for the settlement of the account; that he employed Mr. Cromwell, an attorney at law, to negotiate the settlement for Duke; that such negotiations were actually had between the defendant and his attorneys and Mr. Cromwell; that the account was before the negotiators at the time of settlement, and that it finally was agreed that Beveridge should give up certain undated notes of Duke's which he held, and should also surrender the 800 shares of the tobacco stock, and give a check for $3,076.68 to the order of Duke, and the claim for commissions of $25,839.03 was reduced to $5,500, Mr. Cromwell giving his check to the defendant for that sum, and also giving a receipt to Beveridge for the securities he received on the settlement, and a promise was made that mutual releases should be exchanged. On the second trial all that really appears as proof of the settlement and the accord and satisfaction is that an account containing the transaction of March 31, 1893, was sent to Mr. Duke in a letter of Mr. Beveridge, dated June 10, 1893, in which was inclosed the 200 shares of the tobacco stock and the check for $3,076.68. On the 12th of June, Duke sent to Beveridge the letter of repudiation, and in it says:

"I notice from your statement that you have in hand eight hundred shares of my American Tobacco stock. I notice also that you have me charged on account $25,839.03 for services, and you inclose your check for $3,076.68 to balance account. I understand you to mean by this that it is in settlement. I notice that upon most of these loans the brokerage was deducted when made, and I therefore do not understand where your claim of $25,839.03 comes in. I herewith return your check, and refuse to accept your statement as a settlement, and, inasmuch as I cannot come to New York to arrange the matter, I have forwarded your statement to Mr. Theo. H. Price, with instructions to adjust the matter with you. I absolutely refuse to accept any such settlement, and I demand that you turn over to Mr. Price the eight hundred shares of stock at once, and very much oblige."

On July 10, 1893, Price wrote Duke a letter, in which was contained the following statement:

"Cromwell has settled the account with Beveridge to-day for fifty-five hundred dollars, and delivered to me, as per inclosed copy of letter, eight hundred shares of the stock of the American Tobacco Co., and check for $3,076.68, which latter I have passed to your credit. I inclose you the eight signed, but unfilled, notes that Beveridge has returned to me, and twelve notes that are paid."

In this letter was inclosed one written to Mr. Price by Sullivan & Cromwell, having relation to the Beveridge settlement, but what the contents of that letter were does not appear. Substantially, then, the whole proof now before us, on the matter under consideration, consists of the account showing the item of 400 shares; the receipt of that account by Mr. Duke; its repudiation; the notification by Duke to Beveridge that the account had been referred to Mr. Price

for settlement; the demand that the 800 shares be delivered to Mr. Price; and the subsequent report of Price to Duke that a Mr. Cromwell had settled the account with Beveridge, and that the 800 shares were delivered to him (Price), with a check for $3,076.68, being precisely for the same cash balance as that appearing on the account rendered to Mr. Duke. The point is whether the adjustment and settlement Price was authorized to make has been proven. Of the authority of Price to make the settlement there can be no doubt, nor can there be the slightest doubt that there was no other account to settle than that appearing in evidence, nor that there was anything in dispute at the time that settlement was made other than the commission item and the right of Beveridge to retain the 800 shares, nor that there were any other 800 shares of tobacco stock held by Beveridge than those appearing on the face of the account and surrendered to Price on the settlement. When we take into consideration what there was in contest between these parties; that there was only the one account, and no claim or pretense that there were any other transactions between Duke and Beveridge than those embraced in that account, and that there was nothing else open for settlement between them, so far as the record shows; and that Mr. Price was authorized to settle and adjust a particular account, and to receive the 800 shares of stock appearing on that account,—all these circumstances sufficiently identify the account settled by Mr. Cromwell as being the one Price was authorized to settle, and that was sent to him for settlement, pursuant to the notification which Duke gave to Beveridge in the letter of June 10th. It appears in the record who Mr. Cromwell was, namely, an attorney acting for Mr. Price in matters relating to the Beveridge settlement. I think it is fully proven that the account, the settlement of which was notified to Mr. Duke by Mr. Price in the letter of July 10th, is the account which Price was authorized to adjust with Beveridge, and which Duke declared in his letter of June 12th would be forwarded to Mr. Price for adjustment.

It is claimed by the appellants that the letter of Price to Duke of July 10th was incompetent as evidence of the settlement and accord and satisfaction relied upon by the respondent; that declarations of Price as an agent were admissible only when part of the res gestæ; and that the matters communicated to Mr. Duke in the letter were of things that did not occur during the course of the performance of the subject-matter of the agency. I suppose the rule to be very strict that, to be part of the res gestæ, the statement or declaration of an agent must relate to, and be made in connection with, some act done in the course of his agency. Manhattan Life Ins. Co. v. Forty-Second & G. St. Ferry R. Co., 139 N. Y. 146, 34 N. E. 776; Anderson v. Railroad Co., 54 N. Y. 334. This communication of Price's, made by an agent to his principal, is a statement of his (the agent's) final act in the performance of the duty intrusted to him; is a notification that the fruits of a settlement have then come into his hands; that he had then received the 800 shares of stock he was required to receive, and a check for money paid on the settlement; and the disposition made of the moneys, he passing them to his principal's credit,

and sending to him notes, also the product of the settlement. The statements of the agent are in immediate connection with the act of winding up and concluding the particular employment the subject of the agency, and the letter was produced on the trial from the possession of the plaintiffs. Price's letter does not merely contain hearsay evidence of what Cromwell did, nor is it only a narrative of a past occurrence or a communication not written in the course of the transaction. The case differs from Langhorn v. Allnutt, 4 Taunt. 517, and Reynor v. Pearson, Id. 662, and Kahl v. Jansen, Id., 565, in the same volume. Here Price was the agent of Duke, to settle "the Beveridge account," and to receive certain things from Beveridge. He performed (partly through another) the service, and notified his principal thereof, remitting to him the fruits of the settlement, or instructing him of the disposition made of such fruits, whereby the accord and satisfaction was made; and it appears his principal retained the benefit thereof. I understand the rule to be that, "where an agent's letters have been adopted or acted upon by the principal, they become admissible against him; for the principal's conduct raises the inference that the letters were written within the scope of the agent's authority." 1 Phil. Ev. (Cow., H. & Edw. Notes; 8th Ed.) p. 427. But, apart from that, Price's declaration is directly connected with his act of receiving and disposing of the product of the settlement, and that declaration is necessary to a complete understanding of that settlement. I think the complaint, under the law as stated on deciding the former appeal, was properly dismissed, the proof having been made on the cross-examination of plaintiffs' witnesses that the account was settled, that Duke received the benefit and retained the fruits of the settlement; and, if our former decision was right, there can be no recovery in this action for conversion.

The judgment appealed from should be affirmed, with costs.